**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| WALTER DEMMONS and KIRK RAMSAY, on behalf of themselves and all others similarly situated, | ) |
| Plaintiff, | ) Case No. |
| vs. | ) **INJUNCTIVE RELIEF SOUGHT** |
| ND OTM LLC, | ) |
| Defendant. | ) |

**CLASS ACTION COMPLAINT AND JURY DEMAND**

**INTRODUCTION**

1. Plaintiffs bring this action against ND OTM LLC ("Defendant") for the operation of its paper pulp mill located at 24 Portland Street in Old Town, Maine (the "Facility").

2. Defendant's Facility is surrounded by private, residential properties.

3. Through the Defendant's operation, maintenance, and design of the Facility, Defendant releases noxious odors onto the private properties of Plaintiff and the Class, causing property damage through nuisance, trespass, and negligence.

**THE PARTIES**

4. Plaintiff, Walter Demmons, does reside and at all relevant times has resided at 23 Tallwood Drive, City of Milford, State of Maine.

5. Plaintiff, Kirk Ramsay, does reside and at all relevant times has resided at 28 Main Road, City of Bradley, State of Maine.

6. Defendant is a for-profit limited liability company organized under the laws of the State of Delaware and maintains its principal place of business in the State of Illinois. Defendant's only member, Ken Lui, is also a citizen of the State of Illinois.

7. The Facility is located at 24 Portland Street, Old Town, Maine 04468.

8. At all relevant times, Defendant, its agents, and its predecessors did and continues to do business in Old Town, Maine.

9. Defendant has at all times relevant hereto exercised control and ownership over the Facility.

## JURISDICTION AND VENUE

10. Plaintiffs are citizens of Maine.

11. Defendant is a citizen of Delaware and Illinois, and both Defendant's principal place of business and sole member are located at 1901 S. Meyers Road, Suite 600, Oakbrook Terrace, Illinois 60181.

12. This Court has CAFA jurisdiction under 28 U.S.C. § 1332(d)(2)(a). The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

13. Independent of and in addition to original jurisdiction under CAFA, this Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 23 U.S.C. § 1332(a)(1).

14. The Court has personal jurisdiction over Defendant, who has at least minimum contacts with the state of Maine because it regularly conducts substantial business in Maine through ownership and operation of the Facility.

15. Venue is proper in this Court under 28 U.S.C. 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much of the property that is the subject of this action is situated in this District.

## FACTUAL ALLEGATIONS

16. Defendant operates an industrial paper pulp manufacturing mill which is surrounded by residential properties.

17. Plaintiffs reside within two and a half miles of the Facility.

18. On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiffs' property, including Plaintiffs' neighborhoods, residences, and yards have been, and continue to be, physically invaded by noxious odors.

19. The noxious odors which entered Plaintiffs' property originated from Defendant's paper pulp mill.

20. Defendant purchased the Old Town paper pulp mill in 2018 and resumed paper pulp production after the Facility had been idle since 2015.

21. Defendant produces Penobscot Unbleached Softwood kraft pulp at the Facility, which involves breaking down wood chips into wood pulp using heat, chemical treatment, and water.

22. Defendant's pulp production process involves the use of chemicals to break down wood fibers, a process that produces malodorous gas emissions in the form of total reduced sulfur and sulfur dioxide, which emit a characteristic rotten egg odor.

23. The byproduct of Defendant's pulp production is a waste sludge that Defendant processes in an aerated lagoon for wastewater treatment.

24. If the lagoon is not properly maintained, the waste sludge can produce noxious odor emissions.

25. On numerous separate and distinct occasions, Defendant has discharged discrete and offensive noxious odors into the private residential properties of Plaintiffs and the Class, causing damages to property.

26. More than 120 neighboring residents have reported to Plaintiffs' counsel that they have experienced and are adversely impacted by Defendant's noxious odor emissions.

27. The invasion of Plaintiffs' properties by noxious odors has caused Plaintiffs and the Class substantial harm.

28. Plaintiff Walter Demmons is the owner/occupant of residential property at 23 Tallwood Drive, located within two and a half miles of the Facility.

29. Plaintiff Walter Demmons reported that "the odor is very strong" and that he "can't open [the] windows or go for our walks."

30. Plaintiff Kirk Ramsay is the owner/occupant of residential property at 28 Main Road, located within two and a half miles of the Facility.

31. Plaintiff Kirk Ramsay reported that "it's embarrassing to have people in our home, the mill is causing it to smell SO bad. We've lived here for 36 years and its never smelled so bad."

32. Defendant's history of failing to control its odor emissions is further demonstrated by the following:

a. The Maine Department of Environmental Protection ("DEP") Non-Compliance Review Board ("Board") has consistently received community complaints regarding the "harsh rotten-egg" smell emanating from the mill.

b. In a Board review meeting for February 2021, the Board noted that they had continued to follow up with the Facility regarding the influx of community odor complaints and that "[the Facility] also believe that the odors are from the mill (methanol odors are very strong) and have themselves documented the odors from some distance away."

c. Since the beginning of 2020, there have been at least 50 distinct complaints lodged with the DEP Bureau of Air Quality regarding the noxious odor coming from the Facility.

d. In early 2021, Defendant created a link on their website to accept community odor complaints due to the high volume of complaints being received by the DEP.

33. Defendant's Facility has emitted, and continues to emit, objectionable odors that are detectible outside the bounds of its property.

34. Defendant's Facility has emitted objectionable odors that have caused negative impacts to its neighbors, including Plaintiffs and the putative Class, and their properties.

35. Defendant's emissions have been dispersed across private and public land throughout the Class Area.

36. The foul odors emitted from the Facility are offensive and have caused property damage, including by unreasonably and substantially interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

37. The invasion of Plaintiffs' property and that of the Class by noxious odors has caused physical property damages to private residential property, including diminution of property

values, deprivation of Plaintiffs and the Class' enjoyment of the full value of their properties, and substantial and unreasonable interference with the use and enjoyment of their properties.

38. Penobscot County and the Class Area are home to a wide range of commercial and recreational activities including but not limited to dining, industry, construction, retail trade, lodging, ministry, and education.

39. Plaintiffs and the Class are a limited subset of individuals in Penobscot County and the Class Area that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

40. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

41. Defendant's operation, maintenance, control, and/or use of its Facility has caused noxious odors to invade the properties of Plaintiffs, and all others similarly situated, causing property damage.

42. Defendant negligently, unreasonably, knowingly, intentionally, and/or recklessly failed to properly maintain and/or operate the Facility and caused the invasion of Plaintiffs' property by noxious odors on intermittent and reoccurring dates too numerous to individually recount.

43. Defendant is vicariously liable for all damages suffered by Plaintiffs caused by Defendant's employees, representatives, and agents, who, during the course and scope of their

employment created, allowed, or failed to correct the problems which caused noxious odors to physically invade Plaintiffs' properties.

## CLASS ALLEGATIONS

### A. Definition of the Class

44. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

**All owner/occupants and renters of residential property residing within two and a half miles (2.5) of the Facility's property boundary since October 19, 2018.**

The proposed class boundary is subject to modification as discovery progresses. Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

### B. Numerosity

45. There are over 5,900 residential housing units within 2.5 miles of the Facility. Accordingly, the members of the Class are so numerous that joinder of all parties is clearly impracticable.

46. Prosecution of separate lawsuits by Class members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is therefore appropriate.

### C. Commonality

47. Defendant has engaged in a uniform and common course of misconduct towards members of the Class, giving rise to questions of both law and fact common to all Class members, including but not limited to:

a. Whether and how Defendant negligently, intentionally, recklessly, and willfully failed to maintain and/or operate the Facility;

b. Whether Defendant owed any duties to Plaintiffs;

c. Which duties Defendant owed to Plaintiffs;

d. Which steps Defendant has and has not taken in order to control its emissions through the maintenance and/or operation of its Facility;

e. Whether and to what extent the Facility's emissions were dispersed over the Class Area;

f. Whether it was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in an invasion of Plaintiffs' property interests;

g. Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial and unreasonable annoyance or interference; and

h. The proper measure of damages incurred by Plaintiffs and the Class.

**D. Typicality**

48. The claims of the named Plaintiffs are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories, and see the same type of relief.

49. The claims of Plaintiffs and the other Class members have a common cause, and their damages are of the same type. The claims originate from the same failures of the Defendant to properly maintain and/or operate the facility.

50. All class members have suffered injury in fact as a result of the invasion of their properties by noxious odors emitted by Defendant. The noxious odors emitted by Defendant, interferes with their ability to use, and enjoy their homes, has impacted property values, and has deprived the Class of the full value of their properties.

**E. Adequacy of Representation**

51. Plaintiffs' claims are sufficiently aligned with the interests of the absent members of the Class to ensure that the Class claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

52. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, and in particular class actions stemming from invasions of private property by industrial emissions. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class members.

**F. Class Treatment Is The Superior Method of Adjudication**

53. A class action is superior to other methods of litigation and will provide a fair and efficient method for adjudication of the controversy because:

a. Individual claims by the Class members would be impracticable as the costs of pursuit would far exceed what any one Class member has at stake;

b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class members are unlikely to have an interest in separately prosecuting and controlling individual actions;

c. The concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy; and

d. The proposed class action is manageable.

**<u>COUNT I</u>**

**NUISANCE**

54. Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

55. Defendant's odor emissions constitute a public and private nuisance under the common law and under Me. Rev. Stat. Ann. tit. 17 § 2701 (2022).

56. Plaintiffs utilized their property as a residence and reside within the Class Area.

57. Through the operation of its Facility, Defendant processes wood to produce unbleached Kraft paper pulp. Defendant's production process involves a system of boilers, digesters, and chemical treatment. The chemicals that yield the characteristic rotten egg smell commonly associated with paper pulp mills are total reduced sulfur (TRS) from the lime kiln and sulfur dioxide (SO2) from both the lime kiln and the recovery boiler.

58. If the emissions from these processes are not properly mitigated through venting and pressure control, then they can be released into the air in quantities that interfere with the surrounding residents' ability to enjoy and use their private property.

59. By intentionally and/or negligently failing to reasonably design, operate, repair, and maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious odors on occasions that are too numerous to individually list herein.

60. The noxious odors invading Plaintiffs' properties interfere with Plaintiffs' use and enjoyment of their property.

61. Defendant knew that it was emitting noxious odors into neighboring properties yet failed to take reasonably adequate steps to abate the nuisance and the resulting harm substantially certain to follow their invasion of Plaintiffs' property.

62. As a result of the lost use and enjoyment of Plaintiffs' residential land due to Defendant's fugitive noxious emissions, Plaintiffs have suffered additional harm in the form of reduced property values.

63. Whatever social utility is provided by the Facility is clearly outweighed by the harm suffered by Plaintiffs and the putative Class, who have on numerous occasions been deprived of the full use and enjoyment of their properties and have been forced to endure substantial loss in the use and value of their properties.

64. Additionally, the "offensive smells" that Defendant has caused to invade Plaintiffs' property that interfere with Plaintiffs' use and enjoyment thereof are explicitly listed as a nuisance in Me. Rev. Stat. Ann. tit. 17 § 2802 (2022).

65. As a direct and proximate result of Defendant's intentional and/or negligent conduct in designing, operating, and/or maintaining its Facility, Plaintiffs' properties have been exposed to and invaded by odors.

66. As a direct and proximate result of the invasion of Plaintiffs' private residential properties by noxious odors, Plaintiffs have suffered damages, including loss of property value and interference with the use and enjoyment of their property.

67. Further, the public has a right to breathe uncontaminated and unpolluted air in public spaces.

68. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public spaces by emitting noxious pollutants into the ambient air.

69. Separate and distinct from the property damage incurred by Plaintiffs and the putative class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

70. Plaintiffs suffered and continue to suffer special harm relating to the use and enjoyment of their land and property, deprivation of the full value of their property, and decreased property values—damages that are of a different kind and are additional to those suffered by the public at large.

71. Plaintiffs did not consent to noxious odors entering upon their property.

72. Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a nuisance for which the Defendant is liable to Plaintiffs for all damages arising from such nuisance, including compensatory and injunctive relief, not inconsistent with Defendant's state and/or federal regulatory obligations.

## COUNT II
## TRESPASS

73. Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

74. In maintaining, operating, and/or controlling the Facility, Defendant caused noxious odor emissions to invade the private residential property of Plaintiffs.

75. Defendant intentionally, recklessly, and/or negligently failed to abate the nuisance odors that they knew were invading Plaintiffs' private residential property.

76. As a result, Plaintiffs suffered substantial damages to property in the form of diminution in property values and loss of use and enjoyment of their property.

77. Defendant's invasion of Plaintiffs' lands thus caused substantial damage and infringed on Plaintiffs' right to exclusive possession of their property.

**COUNT III**

**NEGLIGENCE**

78. Plaintiffs incorporate by reference as if fully set forth herein each and every allegation in the Complaint.

79. In maintaining, operating, and/or controlling the Facility, Defendant has a duty to Plaintiffs and the Class, as neighboring holders of private residential property interests, to exercise ordinary care and diligence so that noxious odors do not invade their properties.

80. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly maintained and/or operated its facility and knew, or should have known, that such actions would cause Plaintiffs' property to be invaded by noxious odors.

81. Defendant's breaches of its duties to Plaintiffs and the Class include, but are not limited to:

a. Defendant has failed to properly maintain or operate its paper pulp production machinery and/or its associated systems related to drying, digesting, filtration, treating, venting, and wastewater treatment, particularly regarding the recovery boiler and lime kiln;

b. Defendant has failed to manage, treat, mitigate, and/or control the noxious odors created by its paper pulp manufacturing process, primarily by the recovery boiler and lime kiln, which are the systems most likely to produce noxious odor emissions;

c. Defendant has failed to operate and/or properly maintain its aerated lagoon that treats waste sludge from the wood pulp digesting process;

d. Defendant has breached its duties in additional ways to be determined during discovery.

82. As a direct and proximate result of the failure of Defendant to exercise ordinary care, Plaintiffs' residential properties have been physically invaded by noxious odors.

83. As a direct and proximate result of Defendant's negligence in operating and/or maintaining its facility, Plaintiffs' properties have been exposed to and invaded by noxious odors.

84. As a direct and proximate result of the invasion of Plaintiffs' private residential properties by noxious odors, Plaintiffs have suffered physical property damage, including through diminution in property value, deprivation of full value of property, and interference with use and enjoyment of property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiffs and the Class members and against Defendant;

D. Award Plaintiffs and the Class members compensatory damages arising from the property damages they suffered and any recoverable attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

E. Injunctive relief not inconsistent with Defendant's federally and state enforced air permits;

F. An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' property constituted negligence and nuisance; and

G. Such further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues raised in this Complaint.

Respectfully submitted,
Walter Demmons and Kirk Ramsay, on behalf of themselves and all others similarly situated,
By *the attorneys for Plaintiffs and the Putative Class,*

Dated: October 7, 2022

/s/Christopher R. Causey
/s/ Colin B. Reilly
Christopher R. Causey, Esq. Bar No. 009566
Colin B. Reilly, Esq. Bar No. 006204
BOURQUE CLEGG CAUSEY
& MORIN, LLC
949 Main Street
P.O. Box 1068
Sanford, ME 04073
(207) 324-4422
ccausey@bourqueclegg.com
creilly@bourqueclegg.com

/s/Steven D. Liddle
/s/ Nicholas A. Coulson
Steven D. Liddle
Nicholas A. Coulson
LIDDLE SHEETS COULSON PC
**certification for admission pro hac vice to be submitted*
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015
sliddle@lsccounsel.com
ncoulson@lsccounsel.com